THE NEW YORK AND CHICAGO GRAIN AND STOCK EXCHANGE

v.

H. B. MELLEN.

*Gaming—Action to Recover Money Lost—Secs. 130 and 132, Criminal Code—Chance.*

1. The loser of money lost in such gaming as is prohibited by Sec. 130, Criminal Code, may maintain an action for its recovery.

2. Traffic in differences which are determined by chance is gaming within the meaning of Sec. 130, Criminal Code.

[Opinion filed December 18, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

Messrs. BISBEE, AHRENS & DECKER, for appellant.

Mr. NATHANIEL C. SEARS, for appellee.

MORAN, J. Appellee brought his action in the court below to recover money paid by him to appellant on certain dealings in grain or stocks. The alleged "dealings" were carried on by the aid of a device which the witnesses call a clock. This clock is a piece of machinery that works automatically. The quotations are printed on cards ranging from one-eighth to one-half cent, there being an equal number of each. Fifteen hundred and sixty of these quotations are placed in the machine after having been first thrown together and

mixed up on a table.  At half past nine o'clock in the morning the machine begins to give the market.  The quotations appear one above the other, the upper showing the rise and the lower the decline of the market, the upper being called first and the lower one next.

As soon as called, the quotations are placed on a blackboard. On some of the cards are printed as well as the fractions above stated, the word " wheat," on others the name of some stock. The regular market price of each commodity supposed to be dealt in is placed on the blackboard every morning, and the cards having the name of the particular article would, as they came from the upper or lower aperture of the clock, show the advance or the depreciation of the commodity.

The clock gave quotations every half minute, and those who dealt, bought or sold at the price which, for the time being, was shown on the blackboard, and the usual practice was to close out the deal on the next quotation that changed the price, by the payment of differences.

That this kind of dealing was gaming, within the prohibition of our statute, can scarcely be doubted.  The quotations on the blackboard were determined by the chance operation of the clock instead of any actual sales of the particular article in the market, and each deal was in essence and effect a bet as to what the next card that issued from the clock bearing the name of the article dealt in, would show.

It is suggested that determining by chance at what price an article shall be bought or sold does not render the transaction gaming.  This may be true if there is an actual *bona fide* intent on the one part to deliver, and on the other to receive and pay for, the article at the price fixed; but where the transaction shows an intent merely to traffic in differences which are determined by chance, it is gaming, by whatever method the price may be fixed.  It is not very seriously contended by counsel for appellant that the dealing described was not gaming, but it is argued that, if it was, the money lost can not be recovered by plaintiff, for the reason that he, as well as the defendant, were both engaged in the criminal act, and the law will not aid a plaintiff to recover money paid by him in pur-

suance of such criminal act. If there were no change made in the common law by our statute, counsel's position would be sustained; for, at the common law, if the parties were *in pari delicto*, the law would leave them as it found them, giving aid to neither. But Sec. 132 of our Criminal Code has changed the law in this regard, and gives to the loser in gaming the right to recover from the winner the money or other valuable thing which he shall have so lost and paid or delivered to the winner. That the provisions of Sec. 132 authorize the recovery of money lost in the kind of gaming prohibited by Sec. 130 of the Criminal Code is expressly decided in Pearce v. Foote, 113 Ill. 228.

The finding of the court as to the amount for which the judgment was rendered is clearly supported by the evidence, and the judgment being warranted in point of law, the same will be affirmed.

*Judgment affirmed.*